IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA A. STELMACH | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security | : | NO. 09-3073 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL                                                                    December 21, 2010
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff Patricia Stelmach's claims for a period of disability and Social Security disability (DIB) benefits under Title II of the Social Security Act. Presently before this Court are the parties' pleadings, including Plaintiff's Brief and Statement of Issues in Support of Request for Review and Motion for Summary Judgment[1], the Commissioner's Response to Request for Review[2] and Plaintiff's Reply Brief.[3] On March 17, 2010, counsel presented oral argument. For the reasons which follow, I recommend that the relief sought by Plaintiff be denied and that judgment be entered in favor of Defendant, confirming the decision of the Commissioner.

---

[1] Hereinafter "Plaintiff's Brief."

[2] Hereinafter "Defendant's Response."

[3] The Record, a Complaint, an Answer, Plaintiff's Brief and Statement of Issues in Support of Request for Review and Motion for Summary Judgment, Defendant's Response to Request for Review of Plaintiff, and Plaintiff's reply have been filed and reviewed in this action.

1

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. Stelmach was born on December 7, 1953. *See Administrative Record* at 86.[4] She has a high school education, having completed the twelfth grade. *See Record* at 127. Ms. Stelmach has past relevant work experience as a production coordinator. *Id*. Vocational Expert (VE) Lee Levin identified Ms. Stelmach' previous positions as "sedentary and skilled." *Id*. Plaintiff alleges an onset disability date of May 1, 2003. *See Plaintiff's Brief* at 1. She argues she is unable to work because she suffers from "obstructive sleep apnea (OSA), seizure disorder, coronary artery disease, status post coronary artery bypass graft times three, chronic obstructive pulmonary disease (COPD), left knee impairment and depression." *Id.*

Plaintiff filed a previous application for a period of disability and DIB benefits on May 14, 2003. *Record.* at 18. That claim was denied initially and at the hearing level by Administrative Law Judge (ALJ) Sylvester A. Puzio on April 19, 2004. *Id*.

Plaintiff filed a subsequent application on December 19, 2005. *Id.* This claim was initially denied on March 8, 2006, and a request for a hearing was timely filed. *Id.* A hearing was held on August 7, 2007, before ALJ Daniel L. Rubini in Philadelphia, Pennsylvania. *Id*. at 74. Represented by her attorney, Dennis Gruenke, Esquire, Plaintiff testified, Lee Levin testified as a VE, Navjeet Singh testified as a Medical Expert, and Jody Ann Freed and Jacqueline Stelmach testified as witnesses. *Id.* On November 27, 2007, ALJ Rubini issued a decision in which he found that Ms. Stelmach "has the following severe impairments: Obstructive sleep apnea; Seizure disorder, controlled on medication; History of coronary artery disease with coronary artery bypass graft times three in 2000; Chronic obstruction pulmonary disease (COPD)

---

[4] Hereinafter the "Record."

[sic]; Left knee impairment; and Depression." *Id.* at 21. The ALJ further found that, despite these impairments, Ms. Stelmach is not disabled within the meaning of the Social Security Act because she maintains the residual functional capacity (RFC) to perform "a range of sedentary to light work" and "is capable of performing past relevant work as a work production coordinator." *Id.* at 23-30.

Ms. Stelmach sought review by the Appeals Council, which was denied on May 15, 2009. *Id.* at 6. On July 15, 2009, Plaintiff filed this action alleging that the Commissioner's final decision is based on the application of incorrect legal standards. *See Plaintiff's Brief* at 2.

## III. SOCIAL SECURITY DISABILITY LAW

### A. Disability Determination

The Social Security Act authorizes several classes of disability benefits, including DIB benefits. In order to qualify for benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. § 423(d)(1) (1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1(2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether or not a claimant is under a disability. *See* 20 C.F.R. § 416.920. Step one requires that an individual who is working not be found to be disabled regardless of medical findings. *See* 20 C.F.R. § 416.920(b). Step two involves the evaluation of severe impairments. *See* 20 C.F.R. § 416.92©. Step three requires a determination as to whether the claimant has an impairment or a combination of impairments which meets or equals a listed impairment in Appendix 1. *See* 20 C.F.R. § 416.920(d). Step four requires that an individual who can perform past relevant work not be found to be disabled. *See* 20 C.F.R. § 416.920(e). Finally, step five requires that if an individual cannot perform past relevant work, other factors be considered to determine if other work in the national economy can be performed. *See* 20 C.F.R. § 416.920(f); *see also Ramirez v. Barnhart,* 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *See Plummer*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *See Torres v. Harris*, 494 F.Supp. 267, 301 (E.D.Pa. 1980), *aff'd*. 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this Court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *See Fargnoli*, 247 F. 3d at 38 (3d Cir. 2001); *Knepp v. Apfel,* 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of this Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g. Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness standard applies both to findings of fact and to inferences reasonably drawn from that evidence. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

### IV. THE ALJ'S DECISION

At the August 7, 2007 hearing, the ALJ received medical evidence, heard Plaintiff's testimony, received testimony from a VE, and heard the testimony of two witnesses. After considering all the evidence of record, the ALJ concluded that Ms. Stelmach was not under a disability within the meaning of the Social Security Act from May 1, 2003 through the date of his decision. *See Record* at 30. The ALJ found that:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2007.
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
> 3. The [plaintiff] has the following severe impairments: Obstructive sleep apnea; Seizure disorder, controlled on medication; History of coronary artery disease with coronary artery bypass graft times three in 2000; Chronic obstruction pulmonary disease (COPD) [sic]; Left knee impairment; and Depression (20 CFR 404.1520©).
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> 5. After careful consideration of the entire record, the undersigned finds that the

5

> [plaintiff] has the residual functional capacity to perform a range of sedentary to light work. She can lift and carry no more than 10 pounds occasionally. She can stand and walk at least two hours and up to four hours in an eight hour workday with normal breaks. She has no limitation on her sitting. She must avoid exposure to hazards such as unprotected heights and moving machinery consistent with Social Security Ruling 87-6.
> 6. The [plaintiff] is capable of performing past relevant work as a work production coordinator, a sedentary job. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565).
> 7. The [plaintiff] has not been under disability, as defined in the Social Security Act, from May 1, 2003 through the date of this decision (20 CFR 404.1520(f)).

*Record* at 28-29. Because the ALJ found that Ms. Stelmach' impairments did not equal or meet the requirements of a Listing, he then determined whether or not Plaintiff retained the RFC to perform other work existing in significant numbers in the national economy. In determining Ms. Stelmach's RFC, the ALJ stated the following:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
> ...
> The claimant asserts disabling symptoms from epilepsy, heart condition and depression. She asserts that her epilepsy is uncontrolled and she blacks out without even knowing anything. She further asserts that since she had bypass in February 2000 every time she has a seizure it puts a strain on her heart. She asserts that she can't lift anything and she also has sleep apnea which is shortness of breath and when she goes to sleep she stops breathing so she has a machine that she uses to help her breathe.
> ...
> After considering the evidence of record, the undersigned finds that the [plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
> ...
> [Plaintiff's] seizures are under control with a change in medication. Her sleep apnea is well controlled with a CPAP. Her left knee impairment is not so severe

that she can't stand and walk about two to four hours in an eight hour work day
with normal breaks. Her COPD impairment is severe, but appears not to impose
any significant vocational restrictions. She has a history of coronary artery
disease, but after bypass graft surgery in 2000, she has been stable and does not
appear to have significant limits from that impairment. She had a foot fracture,
but that appears to have healed and resolved and doesn't impose any limitations.
Her depression is not so severe as to require treatment by mental health
professionals. With these impairments she is capable of a range of light to
sedentary work with sedentary lifting/carrying limits. Based on the [plaintiff's]
treatment regimen and the activities of daily living, it is found that the [plaintiff's]
subjective complaints of disabling pain and other symptoms exceed what the
evidentiary record supports and are not fully credible. Therefore, there is no basis
to reduce the [plaintiff's] residual functional capacity beyond the limitations
assessed herein.

*Record* at 24-30. The ALJ went on to conclude that Ms. Stelmach is capable of performing past relevant work as a production coordinator. *See Record* at 30. Present at Ms. Stelmach hearing was VE Lee Levin. Relying on her testimony, the ALJ determined:

At hearing the vocational expert testified that the [plaintiff] has past relevant work
experience as a work production coordinator, Dictionary of Occupational Titles
(DOT) # 221.167-018, a sedentary job with a specific vocational preparation
(SVP) level of six. The expert indicated that the claimant has transferable skills
from that job of using the computer. The job as described by the claimant (i.e., as
actually performed) was light in exertion as she described standing and walking
requirements that exceed two hours per day. However, her knee impairment does
not preclude these requirements as the impairment is asymptomatic and the
medical expert testified that she could stand and walk at least two hours and the
record supports a finding of two to four hours. She, therefore, can perform the
requirements of her past relevant work as she performed it within the limits of her
residual functional capacity. Moreover, even if she were found capable of only
sedentary work, she could perform the job as it is defined in the DOT - at the
sedentary level of exertion. Notably, when she described the job in support of her
prior claim which was the subject of an earlier hearing dated March 18, 2004, it
was indicated that she walked for one hour, stood for one hour and sat for six to
eight hours - a sedentary level job. She did not work in the interim, but her
description of these requirements of the job changed, reflecting negatively on her
credibility.
In comparing the [plaintiff's] residual functional capacity with the physical and
mental demands of this work, the undersigned finds that the claimant is able to
perform it as actually performed and as generally performed.
In the alternative, the vocational expert testified that the [plaintiff's] job skills

7

> would transfer to such jobs as a data entry worker, a semi-skilled job (DOT # 203.582-054, specific vocational preparation level 4, and there are 15,000 such jobs that exist in the regional economy and 640,000 such jobs in existence in the national economy). Such a job could be performed by an individual with the [plaintiff's] residual functional capacity. So, with her age, education, vocational background and residual functional capacity, a finding of "not disabled" would be reached at step five of the sequential evaluation in the alternative, as she would be found capable of making an adjustment to jobs that occur in significant numbers in the national and regional economy.

*Record* at 30. Accordingly, Ms. Stelmach was not found to have been under a disability, as defined in the Social Security Act, from May 1, 2003 through the date of the ALJ's decision. *See Id.*

## V. DISCUSSION

Plaintiff argues that the ALJ's conclusions are not based on substantial evidence because the ALJ did not "discuss all of the relevant evidence," the ALJ inappropriately discredited the opinions of the treating neurologist, and the ALJ did not include all of Ms. Stelmach's relevant limitations in his assessment of her RFC. *Plaintiff's Brief* at 2.

### A. **Plaintiff's Claim that the ALJ's Analysis Excludes Relevant Evidence**

Plaintiff maintains that the ALJ's determination is not based on substantial evidence because the ALJ's analysis does include a discussion of Jody Ann Freed's and Jacqueline Stelmach's testimony, Ms. Stelmach's "memory and fatigue problems," or Dr. Sperling's November 2005 determination that Ms. Stelmach was unable to work. *Id*. at 3-7.

In determining Ms. Stelmach's RFC, the ALJ recited the following:

> At hearing Jodi Freed, a CNA nurse, indicated that she was hired so the claimant is not alone and it was for three to four days a week and she would help with everyday living including cooking and cleaning. She said that the claimant can do things for a small period of time. Jodi Freed indicated that she drives the claimant to doctor appointments and shopping. She said that she never saw the claimant

> have a seizure, but will see her [staring] seizures and she tries to get her attention and it is ten minutes before she comes to. She indicated that in the past month it has happened two times a week and after the seizure she is tired, not focused and worn out. She stated that the [plaintiff's] daughter will tell the nurse that the [plaintiff] had a seizure. She said that in January she had two seizures and the [plaintiff] was not there as she was in the hospital. Ms. Freed stated that the bed was down, her arm was bruised and the bed broke and she said that she had a seizure. Ms. Freed indicated that the claimant's legs are stiff and sore but she can walk to the post office a distance of one and a half blocks, but the [plaintiff] is worn out and has to rest for a half hour, sit in the diner, then walk back. Testifying in response to questions from the undersigned Administrative Law Judge, Ms. Freed indicated that the [plaintiff] goes to the store and it takes a while as the [plaintiff] goes slow and she takes her shopping and to doctor appointments. She said that the [plaintiff] is hardly left alone.
> At hearing the [plaintiff's] daughter, Jacqueline Stelmach, testified that she is 22 years old, lives in the same house as the [plaintiff] and the [plaintiff] is on the first floor and she and her boyfriend live upstairs, and they see her mother everyday. She indicated that she works from six AM to two PM and in the past year the [plaintiff] does not do much around the house, she does not remember how to do some things, cooking makes her tired and she asks for help with the computer. Ms. Stelmach indicated that the [plaintiff] does not drive. She indicated that she needs help to go to the food store and she does not do hobbies. She testified that the [plaintiff] goes to church every Sunday. She indicated that the first time she witnessed a seizure, she was sleeping with her mother and she was 16 years old then. She stated that the last time she saw a seizure was in January. She indicated that she mostly has seizures at night and she is having [staring] seizures.
> The undersigned indicated that on June 18, 2007 it was reported that the claimant was doing fine and had not had a seizure since January. Ms. Stelmach testified that they thought her mother was getting better, but the bed fell, and she had black and blue marks and injured her knee. She said that the [plaintiff] had one to two seizures a month previously and her Grandmother passed away two years ago and she thinks things are getting worse.
> ...
> Based on the [plaintiff's] treatment regimen and her activities of daily living, it is found that the claimant's subjective complaints of disabling pain and other symptoms exceed what the evidentiary record supports and are not fully credible. Therefore, there is no basis to reduce the claimant's residual functional capacity beyond the limitations assessed herein.

*Record* at 27-30. In concluding that the plaintiff has the capacity for sedentary to light work, the ALJ also noted: "When asked about medication side effects, [plaintiff] indicated that she is tired, light-headed, and has nausea. She stated that she has memory problems, long term." *Id.* at 26.

9

Finally, in discrediting the opinion of Dr. Sperling, the ALJ explained:

> Dr. Sperling prepared a Seizures Residual Functional Capacity Questionnaire on October 3, 2006. He indicated that the last three times she had had seizures were May 6, 2006, June 23, 2006 and July 16, 2006. Dr. Sperling indicated that the [plaintiff] should not lift or carry heavy objects or work in exposure to fumes. He further indicated that she would be likely to be absent from work about once a month and about twice a month (interpreted to mean one to two days a month). He indicated that she would be capable of low stress jobs. There were some elements of the questionnaire that Dr. Sperling did not fill out (e.g., the frequency and length of unscheduled breaks). His assessment is not accepted as credible for a number of reasons. First, he bases his assessment on a diagnosis of refractory epilepsy, but the [citation omitted] EEG study was equivocal as to the existence of epileptiform discharge. Second, the [plaintiff] went several months without having a seizure after her medication was adjusted in January 2007. There are no documented seizures since January 2007. Third, Dr. Singh, the medical expert testified that the [plaintiff's] medication adjustment improved control of her seizures.

*Id.* at 28.

It is not the role of this court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. On the contrary, the role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. Based on the above-referenced voluminous record, the various discrepancies in Plaintiff's testimony and in light of the ALJ's sound explanations as to why he discredited certain evidence of record, I find there to be sufficient evidence to support the ALJ's findings regarding Ms. Stelmach's RFC and ability to return to her past relevant work. For that reason, remand is inappropriate and the decision of the ALJ should be affirmed.

### B. **Plaintiff's Claim that the ALJ Inappropriately Discredited the Treating Neurologist's Opinion**

Plaintiff maintains that the Commissioner's finding that Ms. Stelmach is not disabled under the Social Security Act is not supported by substantial evidence because the ALJ unfairly discredited Dr. Sperling's diagnoses. *Plaintiff's Brief* at 8-10. Plaintiff relies on Ms. Stelmach's extensive medical record in her assertion that the ALJ's unfounded medical analysis in this case led him to discredit Dr. Sperling's opinion. As addressed at length above, the ALJ in this case made a reasonable conclusion, based on substantial evidence, that Ms. Stelmach has the RFC to perform sedentary to light work and can return to her past relevant work as a housekeeper. Accordingly, under step four of the analysis, the ALJ found that Ms. Williams was not under a disability as defined in the Social Security Act from May 1, 2003 through the date of his decision. *Record* at 16. And so, for the reasons discussed above, I find there to be sufficient evidence to support for the ALJ's analysis of Dr. Sperling's records and his subsequent findings regarding disability. Accordingly, I recommend that remand be denied and the decision of the ALJ be affirmed.

### C. **Plaintiff's Claim that the ALJ's Residual Functional Capacity Finding is Flawed**

Ms. Stelmach alleges that substantial evidence does not support the ALJ's determination that she has the capacity for a range of sedentary to light work and can return to her past relevant work as a production coordinator. Plaintiff contends that, because the ALJ's analysis failed to include sufficient restrictions as to her "mental limitations," the ALJ's resultant findings are not supported by substantial evidence. *Plaintiff's Brief* at 10-11. Accordingly, Plaintiff concludes that "[given] all of Ms. Stelmach's impairment-related limitations, particularly the cognitive

deficits, fatigue and medication side effects that she suffers, it is clear that she is unable to perform her past relevant work that was performed at a highly skilled level." *Id.* at 12.

A claimant's RFC is the most that she can do despite her limitations. *See* 20 CFR § 416.945(a). The final responsibility for deciding this issue is reserved for the Commissioner. *See* 20 CFR § 416.927(e)(2). At the ALJ hearing level, it is the ALJ who is responsible for assessing a claimant's RFC. *See* 20 CFR § 416.946©.

Here, the ALJ concluded that Ms. Stelmach suffers from obstructive sleep apnea, seizure disorder, coronary artery disease, COPD, left knee impairment, and depression. *Record* at 21. He further determined that, despite these impairments, Plaintiff has the RFC to perform a range of sedentary to light work. *Id.* at 23. As previously noted, in making these findings, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* He also considered the testimony of several expert witnesses and opinion evidence. *Id.* at 24.

In evaluating the medical evidence, the ALJ determined:

> [Plaintiff] has a seizure disorder and Dr. Michael [Sperling], MD reported on December 6, 2005 that she had tonic-clonic seizures starting at age 46 and they generally occur at night in her sleep and seemed to occur about one a month to once every other month and she had occasional partial complex seizures with a total of two in the year 2005. Dr. Sperling further indicated that the seizures were qualified as "intractable" [citation omitted], however, they are not. On February 21, 2006 Dr. Sperling indicated that she had been taking Trileptal and she had had no seizures since the Trileptal was begun [citation omitted]. She underwent an Electroencephalogram (EEG) on February 5, 2007 and the study was reported to show nonspecific findings. It was indicated that the intermittent focal left anterior temporal theta was suggestive of a possibility of a structural abnormality in that hemisphere or an underlying epileptogenic region. It was indicated that no epileptiform discharges were seen [citation omitted]. In addition, Dr. Richard W. Snyder, DO reported on June 18, 2007 that the [plaintiff] had been doing absolutely great since her last visit. He further indicated that there had been no

12

seizure episodes since January of [2007]. In an earlier report dated March 13, 2007, Dr. Snyder indicated that the frequency of her seizures was once every four months. He also reported a nonfocal neurological examination shows no neurological deficits [citation omitted]. Dr. Sperling prepared a Seizures Residual Functional Capacity Questionnaire on October 3, 2006. He indicated that the last three times she had had seizures were May 6, 2006, June 23, 2006 and July 16, 2006. Dr. Sperling indicated that the [plaintiff] should not lift or carry heavy objects or work in exposure to fumes. He further indicated that she would be likely to be absent from work about once a month and about twice a month (interpreted to mean one to two days a month). He indicated that she would be capable of low stress jobs. There were some elements of the questionnaire that Dr. Sperling did not fill out (e.g., the frequency and length of unscheduled breaks). His assessment is not accepted as credible for a number of reasons. First, he bases his assessment on a diagnosis of refractory epilepsy, but the [citation omitted] EEG study was equivocal as to the existence of epileptiform discharge. Second, the [plaintiff] went several months without having a seizure after her medication was adjusted in January 2007. There are no documented seizures since January 2007. Third, Dr. Singh, the medical expert testified that the [plaintiff's] medication adjustment improved control of her seizures.

The [plaintiff] also has a history of coronary artery disease and underwent three-vessel coronary artery bypass graft surgery in 2000. She underwent a Persantine Myoview stress test on October 20, 2005 and the study failed to reveal evidence of ischemia via EKG or nuclear imaging. The study showed a preserved ejection fraction of 65% (which is within normal limits) and no atrial or ventricular arrhythmias were encountered [citation omitted]. She was hospitalized from June 23, 3006 to June 27, 2006 for midsternal stabbing chest pain. Her pain was felt to be noncardiac in nature based on the absence of EKG changes. She was discharged with a diagnosis of chest pain, atypical [citation omitted]. She underwent another nuclear stress test on October 25, 2006 and Dr. William Combs, MD reported that the [plaintiff] had only one episode of angina since her last visit during emotional stress, which was relieved with sublingual nitroglycerin. He indicated that the [plaintiff] had a small, mild, predominantly reversible anteroapical defect with a mild degree of ischemia in the distal left anterior descending coronary artery and her left ventricular ejection fraction was normal at 61% [citation omitted]. Dr. Singh the medical expert did not note any limits related to the [plaintiff's] cardiac history in his testimony and the record does not show any symptoms or limits.

The [plaintiff] who was a two-pack a day smoker for 30 years, has COPD. On July 24, 2006 Dr. Gary Aaronson, DO reported that the pulmonary function tests (PFT's) demonstrated small airway disease with marked improvements with bronchodilator with moderate restrictive lung disease and normal diffusion capacity [citation omitted]. An earlier set of PFT's on April 19, 2006 was reported to show reduced mid flows which may indicate very early obstruction,

> but when compared to the FVC they were borderline low [citation omitted]. The record does not demonstrate any functional limitations from her COPD. She also has sleep apnea and there are some sleep studies in the record documenting that impairment. However, on July 11, 2005 it was reported that she was currently doing well with her nasal CPAP [citation omitted]. Dr. Singh indicated that her CPAP was working and she was getting sleep.

*Record* at 21-31.

A Physical RFC Assessment was completed for Plaintiff on May 16, 2007. *Id.* at 635-638. The evaluator, Dr. Lisa Doherty, determined that Plaintiff could not work as a result of her emotional limitations. *Id.* In determining that this assessment was not credible, the ALJ explained:

> Dr. Lisa Doherty prepared a Physical Residual Functional Capacity Questionnaire and rated the [plaintiff] "unfit to work at all" due to her depression [citation omitted]. Dr. Doherty's assessment is not accepted as credible for a number of reasons. First, her daily living activities are inconsistent with the functioning of an individual with a disabling depression impairment. Second, the [plaintiff's] treatment record is inconsistent with a disabling depression impairment. She has not been hospitalized for depression symptoms and has not been treated over an extended period of time by a mental health professional.

*Id.* at 29.

Here again, it is not the role of this court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. Instead, the role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. As above, based on the voluminous record and in light of the ALJ's sound explanations as to why he discredited certain evidence of record, I find there to be sufficient evidence to support the ALJ's findings regarding Ms. Stelmach's RFC and ability to return to her past relevant work. For that reason, remand is inappropriate and the decision of the ALJ should be affirmed.

## VI.  RECOMMENDATION

Consistent with the above discussion, it is recommended that judgment be entered in favor of Defendant, affirming the decision of the Commissioner of Social Security and the relief sought by Plaintiff be denied.

 S/M.FAITH ANGELL  
M. FAITH ANGELL  
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix, Sr. Federal Building, Suite 211
900 Market Street
PHILADELPHIA, PENNSYLVANIA 19107-4228

**Chambers of**
**M. FAITH ANGELL**                                   P:   (215) 597-6079
United States Magistrate Judge                        F:   (215) 580-2165

*FAX / MAIL COVER SHEET*

CASE NO.   09-3073                         **DISTRICT COURT JUDGE:** PD
                                                      267-299-5069

TODAY'S DATE:   December 21, 2010          LAW CLERK'S INITIALS: JJK

<u>VIA FAX:</u>

MEYER SILVER, ESQ.                                    610-658-0668

EDA GIUSTI, ESQ.                                      215-597-4662